UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff,<br>v.<br>HAO ZHANG,<br>   Defendant. | Case No. 5:15-cr-00106-EJD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS**<br><br>Re: Dkt. No. 119 |

Defendant Hao Zhang gave a post-arrest interview to FBI agents without an attorney present. Zhang now moves to suppress his statements as obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Dkt. No. 119. The Government opposes.

Having considered the relevant pleadings and the arguments of counsel from the hearing held on January 11, 2018,[1] the court has determined that Zhang voluntarily, knowingly, and intelligently waived his right to counsel. On that basis, Zhang's motion to suppress will be denied for the reasons explained below.

**I.   BACKGROUND**

Zhang is from the People's Republic of China and a professor at Tianjin University. Decl. of Hao Zhang, Dkt. No. , at ¶ 1. In a 2015 indictment, Zhang was charged with economic espionage and conspiracy to commit economic espionage in violation of 18 U.S.C. § 1831, and

---

[1] Zhang's request for an evidentiary hearing was denied because the interview was captured with video and audio recordings, all of which the court reviewed in conjunction with this motion. See United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000) (holding an evidentiary hearing is only required "when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist").

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS
1

theft of trade secrets and conspiracy to commit theft of trade secrets in violation of 18 U.S.C. § 1832. He was arrested by border agents at Los Angeles International Airport ("LAX") on May 16, 2015, when he entered the United States to attend a conference in Phoenix. Id. at ¶ 2; Decl. of Richard A. Smith, Dkt. No. 124, at ¶ 3.

After his arrest, FBI Special Agents Richard Smith and Heather Young questioned Zhang while he was still at LAX. Smith Decl., at ¶ 3. The interview was recorded. Id. at ¶ 5.

Neither Agent Young nor Agent Smith speaks Mandarin, and the entire meeting with Zhang was conducted in English. Id. at ¶ 4. However, the agents knew that Zhang "had lived in the U.S. for approximately ten years and spoken English while obtaining his Ph.D. at the University of Southern California." Id. Agents Young and Smith had also "reviewed email messages from [Zhang's] email account, including thousands of messages to and from various parties, including co-conspirators, businesses, academic institutions, and colleagues that were written in English." Id.

After introductions, Agent Young read Zhang a consular notification from a form which Zhang signed approximately six minutes into the interview. Agent Young then provided Zhang the FBI's "Advice of Rights" form in English. Young described the form as follows:

> Okay. Alright. So that is that form and then here is the other form we need done. So as you've probably seen or heard this before, this is what we call Advice of Rights Form. You may be familiar where we advise people their rights for when they have been arrested and, so, as Agent Smith was telling you earlier, we're going through these forms. This is kind of the transition for us where we can continue or if you choose to invoke your rights then, you know, we will respect, then, of course respect your rights, and stop the interview. But, I'm going to have you read each one of these lines and just be sure you understand everything. So, can you read out loud for us?

As prompted, Zhang accurately read aloud the advisement of rights. He stated:

> Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have your lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questions, if you

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

2

wish. If you decide to answer questions now without a lawyer present, you have a right to stop answering at any time.

Once Zhang finished reading, Agent Young asked Zhang if he understood the words he just read. Zhang responded: "Yeah."

Young informed Zhang that a Mandarin version of the form was available, and handed it to Zhang, who reviewed the document for approximately six seconds. The following conversation then occurred:

> Zhang: No, I cannot afford a lawyer.
>
> Young: Well, if you can't afford one, after your initial appearance, one may be appointed for you, but we want to make sure you understand these rights and what this means.
>
> Zhang: Yeah, yeah.
>
> Young: And, also too, just to explain to you that even if you want to go ahead and sign this now, meaning that you're willing to talk to us right now.
>
> Zhang: Yeah. Yeah. That's okay.
>
> Young: But, but, just so you'll know too, you can still, at any time, stop the interview --
>
> Zhang: Yeah. Yeah. Yeah.
>
> Young: -- okay, and choose not to talk with us anymore. So, just know that that's always . . . an option for you.
>
> Zhang: Okay.

Zhang then signed the waiver.

## II. LEGAL STANDARD

### A. Motion to Suppress

Motions to suppress evidence must be made prior to trial "if the basis for the motion is then reasonably available." Fed. R. Crim. P. 12(b)(3)(C).

Defendant's motion is based on an alleged violation of Miranda. For suppression purposes, "[s]tatements taken in violation of Miranda may not be used to prove the prosecution's case at trial." United States v. Lemon, 550 F.2d 467, 473 (9th Cir. 1977); accord Miranda, 384

U.S. at 444.

   **B.   Miranda**

In Miranda, the Supreme Court held that the right against self-incrimination applies during custodial interrogation, and that suspects in custody must be apprised of their constitutional rights before questioning may proceed. Miranda, 384 U.S. at 460-61, 467; see also United States v. Patane, 542 U.S. 630, 639 (9th Cir. 2004) (plurality opinion) ("[I]n Miranda, the Court concluded that the possibility of coercion inherent in custodial interrogations unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated."). The suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444. "The Court recognized that these procedural safeguards were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected." Michigan v. Tucker, 417 U.S. 433, 444 (1974); see also Patane, 542 U.S. at 637 ("The Miranda rule is not a code of police conduct, and police do not violate the Constitution (or even the Miranda rule, for that matter) by mere failures to warn.").

Interrogation can proceed if the suspect voluntarily, knowingly, and intelligently waives the rights advised in the Miranda warning. Miranda, 384 U.S. at 479; Berghuis v. Thompkins, 560 U.S. 370, 382 (2010). Determining whether a waiver satisfies this standard has "two distinct dimensions." Moran v. Burbine, 475 U.S. 412, 421 (1986). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id. "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id.

On a motion to suppress like this one, the Government must satisfy the "heavy burden" of proving the waiver of constitutional rights. Miranda, 384 U.S. at 475. Despite the description,

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS
4

this standard does not require the Government to establish "formal or express statements of waiver that would be expected in, say, a judicial hearing to determine if a guilty plea has been properly entered." Berghuis, 560 U.S. at 383. Rather, the Government must prove by a preponderance of the evidence that the defendant understood "the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421. Such a waiver can be "implied from all of the circumstances." Berghuis, 560 U.S. at 384. "Several factors to consider are (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system." United States v. Crews, 502 F.3d 1130, 1140 (9th Cir. 2007).

"[I]f the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension," then a court may properly "conclude that the Miranda rights have been waived." Moran, 475 U.S. at 421.

### III. DISCUSSION

Zhang argues he was "affirmatively misled" by Agent Young to believe he had no right to counsel during the LAX interview. On that basis, Zhang argues he did not voluntarily, knowingly and intelligently waive the rights constituting the Miranda advisement.

Zhang does not dispute that Agent Young presented him with correct written versions of the Miranda warning in both English and Mandarin, and does not dispute that he provided an express waiver prior to questioning. Thus, the question critical to this motion is whether Zhang properly understood his right to have an attorney present during post-arrest questioning in light of Agent's Young statement that a lawyer would be appointed after a court appearance, such that his waiver of the right was voluntary, knowing, and intelligent. The evidence shows that it was.

#### A. The Right to Counsel Advisement

Four advisements make up a Miranda warning:

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

5

> [A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Florida v. Powell, 559 U.S. 50, 59-60 (2010) (quoting Miranda, 384 U.S. at 479).

Relevant here are the third and fourth advisements, which are "invariable" (Id. at 60) and "absolute prerequisites to interrogation." Miranda, 384 U.S. at 471. Officers must effectively and expressly explain these warnings in order to fully apprise a suspect of his or her rights. Id. at 473.

This does not mean, however, that Miranda warnings must adhere to a strict formula. Powell, 559 U.S. at 60. The Supreme Court has "never insisted that Miranda warnings be given in the exact form described in that decision." Duckworth v. Eagan, 492 U.S. 195, 202 (1989); accord California v. Prysock, 453 U.S. 355, 359 (1981) ("Miranda itself indicated that no talismanic incantation was required to satisfy its strictures."). Instead, "what Miranda requires 'is meaningful advice to the unlettered and unlearned in language which [they] can comprehend and on which [they] can knowingly act.'" United States v. Connell, 869 F.2d 1349, 1351 (9th Cir. 1989) (quoting Coyote v. United States, 380 F.2d 305, 308 (10th Cir. 1967)). "[T]he combination or the wording of its warnings cannot be affirmatively misleading," and the "warning must be clear and not susceptible to equivocation." United States v. Juan-Cruz, 314 F.3d 384, 387 (9th Cir. 2002). As to the right to counsel specifically, the "Miranda warning must convey *clearly* to the arrested party that he or she possesses the right to have an attorney present prior to and during questioning." Id. at 388 (emphasis in original). "The warning also must make clear that if the arrested party would like to retain an attorney but cannot afford one, the Government is obligated to appoint an attorney for free." Id.

**B. Zhang Understood and Waived the Right to Counsel**

Under the Miranda framework, the totality of the circumstances surrounding the LAX interview demonstrate that Zhang understood his right to have counsel present during questioning, and that he chose not to invoke or rely on that right when he signed the waiver on the Advice of

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

6

Rights form. Several observations made from the record support this conclusion.

### i. Zhang was Sufficiently Proficient in English

English is not Zhang's native language. Yet, the evidence shows that Zhang was proficient enough in English to read and understand the Miranda advisement.

First, Zhang's professional background demonstrates a high level of functioning. Zhang is a professor at a Chinese university. He confirmed during preliminary questioning that he had previously lived in the United States for ten years. Agents Young and Smith also knew that Zhang had earned an advanced degree from an American university and had written significant email correspondence in English.

Second, the English version of the Miranda advisement clearly conveyed to Zhang he had the right an attorney during any questioning. See id. at 387. The word choice, structure and phrasing are not complex, and were accessible to someone with Zhang's educational and professional experiences. See Connell, 869 F.2d 1349, 1351.

Third, Zhang's conduct during the interview contained the earmarks of comprehension. The video shows that Zhang spoke to the agents in English from the moment he entered the interview room and had no trouble conversing with them thereafter. Zhang did not ask for a translator, did not ask the agents to repeat anything, and never indicated that he did not understand the conversation. After Agent Young read the consular notification, she asked Zhang: "English is ok?" Zhang responded: "That's ok." During the entire interview, Zhang was engaged, provided coherent and relevant responses to questions, was able to follow the agents' instructions, and signified his grasp of the discussion by nodding his head or saying "ok."

Fourth, Zhang confirmed fluency by easily reading aloud the seven Miranda warnings in English, and affirmed to Agent Young that he understood them by answering "Yeah" to the question: "And, do you understand these words?" Though Zhang expressed some concern later in the interview about his ability to understand court proceedings, the video does not reflect any discernible deficiency in Zhang's capability of speaking and understanding English during the

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

7

LAX interview. The expert report submitted by Zhang with his reply does not persuade the court otherwise.

### ii. Zhang was not Intimidated or Coerced

Nothing suggests that Zhang felt intimidated or coerced, or that Zhang's actions or abilities were affected by the fatigue of travel.

The interview took place around a table in an office-like setting. Agent Smith greeted Zhang by shaking his hand, and both agents introduced themselves before proceeding. The agents spoke to Zhang calmly, explained the interview process, offered him food and water, told him he could use the restroom, and told him more than once he could stop the interview at any time. Agent Smith also notified Zhang early in the conversation that Zhang's wife was not under arrest and would be permitted to continue traveling.

### iii. Zhang did not Express Confusion

The evidence does not support Zhang's argument that his statement, "I cannot afford a lawyer," reflected confusion or a misunderstanding of his right to counsel.

Zhang made the comment while reviewing the Mandarin version of the Miranda warning, after having already read the English version aloud, including the advisement: "If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish." In other words, Zhang had by then received the same advisement twice, albeit in different languages, but both of which he could understand. Under these circumstances, the statement "I cannot afford a lawyer" demonstrates that Zhang in fact comprehended the right to counsel, and was responding to it by informing the agents he was financially unable to hire an attorney on his own.

The alternative interpretations offered by Zhang are incompatible with the video evidence. Zhang argues his statement demonstrated confusion because it was "totally non-responsive to any pending questions," and claims it shows he did not understand the right-to-counsel advisement in either language. But characterizing the statement as "non-responsive" is correct only to the extent that no interview questions were pending when Zhang spoke. The statement was responsive to

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

8

*something* when Zhang made it: the Mandarin advisement he was simultaneously reviewing. Zhang plainly understood the advisement because he repeated part of it. Accordingly, the timing of Zhang's statement does not reflect confusion or misunderstanding.

Zhang also argues he made the statement because he was "clearly concerned that he could not afford counsel." If that is true, then Zhang necessarily concedes he understood the advisement. Reliance on such a concession is unnecessary, however, because Zhang's words, tone of voice, facial expressions and mannerisms are not consistent with "clear concern" for his inability to pay for legal representation.

In addition, Zhang contends his statement triggered the agents' obligation to clarify ambiguities before seeking a waiver and beginning general interrogation. See United States v. Rodriguez, 518 F.3d 1072, 1080 (9th Cir. 2008). For reasons explained, Zhang's statement is better classified as informational rather than an ambiguous invocation of the right to counsel. In any event, the court describes in the next section why Agent Young satisfied the clarification requirement even if it arose by redirecting Zhang to the Miranda advisement.

### iv. Agent Young did not Mislead Zhang

Agent Young's response to Zhang's comment he could not afford a lawyer - that "if you can't afford one, after your initial appearance, one may appointed for you" - was not perfect, but could not have "affirmatively misled" Zhang into believing he had to proceed with the interview without counsel.

Again important is the fact that Zhang had already been given two complete Miranda warnings, and was reviewing the Mandarin version of the advisement when Agent Young informed him that a lawyer would be appointed at his first court appearance. Agent Young then referred Zhang back to the written advisement. Pointing to the Mandarin document, Agent Young stated: "[W]e want to make sure you understand *these* rights and what *this* means." Zhang looked at the document again before he signed the waiver.

By directing Zhang back to the accurate advisement he had twice read and understood,

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

9

Agent Young cleared up any possible confusion about the right to counsel and about Zhang's ability to invoke the right before any questioning. This case is therefore not one where the right was "linked to a future point in time after police interrogation," thereby "not fully advis[ing] the suspect of his right to appointed counsel before such interrogation." Prysock, 453 U.S. at 360; see also Duckworth, 492 U.S. at 205 (explaining the "vice" referred to in Prysock was that warnings linking the right to counsel to a future event "would not apprise the accused of his right to have an attorney present if he chose to answer questions"). Here, Zhang was fully advised of his right to have a lawyer present during all stages of interrogation. Agent Young's statement was not inconsistent with that right, but rather anticipated the "relatively commonplace" question of when a suspect will obtain counsel. Duckworth, 492 U.S. at 204.

In sum, the Government has satisfied its burden to show by a preponderance of the evidence that Zhang made an "uncoerced choice" with the "requisite level of comprehension" to answer the agents' questions without counsel at the LAX interview. Moran, 475 U.S. at 421. As a consequence, Zhang effectively waived his Miranda rights. This motion will be denied.

## IV. ORDER

The Motion to Suppress Post-Arrest Statements (Dkt. No. 119) is DENIED.

**IT IS SO ORDERED.**

Dated: February 9, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cr-00106-EJD
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS