Thomas J. Nolan (CA SBN 48413)
Daniel B. Olmos (CA SBN 235319)
NOLAN BARTON & OLMOS LLP
600 University Avenue
Palo Alto, CA  94301
Tel. (650) 326-2980
Fax (650) 326-9704

Edward Swanson (CA SBN 159859)
August Gugelmann (CA SBN 240544)
SWANSON & MCNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA  94104
Tel. (415) 477-3800
Fax. (415) 47-9010

Counsel for Defendant
Hao Zhang

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>HAO ZHANG, ET AL.,<br><br>　　　　　　　Defendants. | Case No.: CR 15-00106 EJD<br><br>**TRIAL BRIEF** |

Defendant Hao Zhang, through undersigned counsel, hereby submits this Trial Brief to assist the Court with respect to the bench trial in this matter set to begin on September 10, 2019.

**I.   Background Information**

Hao Zhang was born on October 20, 1978, in the rural village of Jiangnan in Hunan, a province in Central China.  Dr. Zhang had a modest upbringing but excelled academically, earning a position at a top-level high school in Hunan Province.  He was then admitted, at the age of 16, to Jilin University, a top university located in the northeast of China.  Dr. Zhang graduated at the top of his class and was offered a position in the university's master's program in physics, and thereafter was encouraged by the college to apply to universities in the United States to pursue a Ph.D.

In 2000, Dr. Zhang received a full scholarship to Texas A&M University, which included a $10,000 teaching assistant scholarship. By comparison, the average monthly salary for a university professor in China at the time was about $100. Six months after he arrived in Texas, Dr. Zhang received a belated offer from USC in its Ph.D. program, and he elected to transfer.

USC required its Ph.D. students to have a research advisor, and Mr. Zhang chose Dr. Eun Sok Kim, an engineering professor who specialized in Micro Electro-Mechanical Systems (MEMS). Although Dr. Zhang had never studied MEMS before, after taking an introductory course under Dr. Kim's professorship, he joined Dr. Kim's MEMS research team. Dr. Zhang quickly began to see Dr. Kim as a professional mentor because of Dr. Kim's industrious work ethic and dedication to his students. In the spring of 2002, Dr. Zhang worked tirelessly in preparation for the 2002 IEEE International Frequency Control Symposium, which resulted in his becoming the lead author of an internationally-recognized research paper on a structural innovation at the boundary of an FBAR resonator. By the time of his graduation in 2006, Dr. Zhang would publish a total of 23 papers in various international journals, many on the topics of MEMS and, more specifically, radio frequency (RF) filters.[1]

In May 2006, Dr. Zhang completed his master's degree in Physics and Ph.D. in Electrical Engineering, which included a dissertation on bulk acoustic resonators supervised by Dr. Kim, and he began his search for employment. He applied for university faculty positions in the United States, but he was unable to secure a teaching position due in large part to his poor English language skills. Dr. Zhang then applied to various MEMS engineering positions, and accepted a position at Skyworks

---

[1] Radio frequency (RF) filters include both surface acoustic wave (SAW) and bulk acoustic wave (BAW) filters. SAW filters have a relatively simple structure, whereas BAW filters are more complex, more expensive to manufacture, and are better quality. FBAR filters are a type of BAW filter – they are composed of multiple resonators on a silicon wafer using MEMS technology.

2

Solutions in Boston, MA.  Dr. Zhang moved to Boston with his new wife Liping, whom he had met the previous summer while back in China.

At Skyworks Solutions, Dr. Zhang worked on the design of BAW filters, on which he had written an entire chapter in his Ph.D. dissertation, and was quickly an instrumental member of the team.  Dr. Zhang received recognition and awards for his contribution at Skyworks.  However, in January 2009, Skyworks defunded research on the BAW filter due to the project's perceived lack of financial viability.  When the unit was dissolved, Dr. Zhang was transferred to a different team which worked on silicon switches.  The dull nature of his new position caused Dr. Zhang to lose interest in his work at Skyworks.  Before long, he restarted his search for a teaching position in the United States.

Dr. Zhang was then approached by a USC classmate, Wei Pang, who had worked on MEMS filters at Avago Technologies since his graduation.  Mr. Pang encouraged Dr. Zhang to apply with him for teaching positions at Tianjin University (TJU) in China, which would include building a MEMS research laboratory at the university.  TJU is a premier technical university in China, although in 2009 it did not yet have a MEMS research laboratory, an asset considered standard for technical universities around the world.  Dr. Zhang, Mr. Pang, and several others worked for months developing concepts for the research laboratory – conduct which forms the primary basis of the criminal charges in this case – and Dr. Zhang and Mr. Pang ultimately agreed to accept professor positions at TJU.  In the fall of 2010, Dr. Zhang's professorship effectively began. He taught two MEMS courses to undergraduate and graduate students and received numerous teaching awards.

Dr. Zhang and Liping gave birth to a son in 2013.  Dr. Zhang was arrested one month before their son's second birthday.  For the past four years while Dr. Zhang has been on house arrest in California, he has seen his son only for several weeks during the summers when Liping and their son come to visit.

3

## II.     Procedural History

Dr. Zhang was charged in a sealed Superseding Indictment dated April 1, 2015, with one count of Conspiracy to Commit Economic Espionage in violation of 18 U.S.C. § 1831(a); one count of Conspiracy to Commit Theft of Trade Secrets in violation of § 1832(a); fourteen substantive counts of Theft of Trade Secrets in violation of § 1832(a); and fourteen corresponding substantive counts of Economic Espionage in violation of § 1831(a).[2]  Eleven of the fourteen charged trade secrets are alleged to belong to Avago Technologies, and three purportedly belong to Skyworks.

Just two weeks after the government secured the Superseding Indictment against Dr. Zhang, the State Department issued him a multiple entry visa to permit him to travel to the United States from China in order to attend a conference at which he had been invited to speak.  On May 16, 2015, Dr. Zhang was arrested at LAX upon his arrival on U.S. soil, interrogated at the airport, and then turned over to the U.S. Marshal.  Mr. Zhang made his initial appearance in the Northern District of California on May 29, 2015, and was ordered released on July 8, 2015, on series of conditions including a $500,000 fully-secured bond and house arrest with GPS monitoring.[3]  The next morning, authorities at the San Jose Main Jail turned Dr. Zhang over to the U.S. Marshal, which then delivered him to Immigration and Customs Enforcement (ICE) agents in San Jose pursuant to an immigration detainer which had apparently been lodged by the Department of Homeland Security.  Dr. Zhang spent the next several weeks in immigration detention at the Yuba County Jail, despite a release order from this Court, while the Justice Department claimed it had no authority over the actions of its sister Executive Branch agency.  On July 24, 2015, the Court issued an order that "the government must be

---

[2] Mr. Zhang is charged with 30 of the 32 counts in the Superseding Indictment.  There is one substantive count of Economic Espionage and one substantive count of Theft of Trade Secrets for which Mr. Zhang is not charged.

[3] Although there have been some modifications of Mr. Zhang's release conditions, he remains on house arrest with GPS monitoring to this day, more than four years after his initial arrest.

4

prepared to explain whether a 'lesser remedial action' than dismissal is available if defendant Zhang cannot be released on bail as previously ordered by this court." *See* Docket No. 40. Following a hearing on July 28, 2015, Dr. Zhang was finally released from government custody.

Following several years of discovery and pretrial motion litigation, the parties agreed, on June 19, 2019, to waive jury and conduct a bench trial largely on the basis of an Evidentiary Stipulation of Facts for Trial. *See* Docket No. 292. The parties do <u>not</u> stipulate or agree that the Evidentiary Stipulation of Facts for Trial contains evidence sufficient to meet the elements of the charged crimes under §§ 1831 and 1832.

### III.   Intent to Call Witness Eun Sok Kim

Pursuant to Federal Rule of Criminal Procedure 16(b), the defense discloses the following witness who may testify at trial.

**Professor Eun Sok Kim** is Professor of Electrical and Computer Engineering at the University of Southern California School of Engineering. From July 2009 to June 2018, he was the Chair of the Electrophysics division of the Ming Hsieh Department of Electrical Engineering-Electrophysics.

As discussed above, Mr. Kim was a professor and mentor to Mr. Hao Zhang during Dr. Zhang's tenure at the University of Southern California from 2000 to 2006, and also supervised Dr. Zhang's Ph.D dissertation. Mr. Kim will testify about the academic training Dr. Zhang received at USC, where he focused his studies on FBAR technology. Mr. Kim will testify generally about MEMS technology, and how radio frequency (RF) filter technology (which, again, includes both surface acoustic wave (SAW) and bulk acoustic wave (BAW) filters) fits into that broader discipline. He will offer his opinion, based upon his years teaching Dr. Zhang, his supervision of Dr. Zhang's dissertation, and his continued relationship with Dr. Zhang, that Dr. Zhang is an honest person.

Mr. Kim will also testify about the MEMS research laboratory at USC and its policies during the time that Dr. Zhang was a student at USC. Mr. Kim will testify that the USC MEMS research lab

5

had relationships with numerous private companies who used the lab for their own research. He will testify that there was a strong preference in the USC MEMS lab not to sign non-disclosure agreements with these private companies in order to facilitate the free and open exchange of ideas. He will also testify that the USC MEMS lab was often visited by students and professors from other universities around the world. Mr. Kim will testify that he has visited numerous MEMS research laboratories at universities around the world, and in his personal experience those laboratories have similar policies regarding the open exchange of information as did the USC MEMS lab during Dr. Zhang's time at the university.

### IV. Legal Issues to Be Decided At Trial

To qualify as a trade secret under 18 U.S.C. § 1839(3), the Government must prove beyond a reasonable doubt that:

    a. The information is owned by the entity claiming it as a trade secret;

    b. The information is actually secret in that it is not generally known to, nor readily ascertainable by, the public;

    c. The owner of the information took reasonable measures to keep the information secret; and,

    d. The information has independent economic value because it is secret (i.e., not generally known to or ascertainable by the public).

Further, to demonstrate a violation under 18 U.S.C. § 1832(a), the Government must prove that:

    a. The owner of the information did not consent to the defendant taking, copying, or possessing the information;

    b. The defendant knew the information was a trade secret;

    c. The defendant intended to convert the trade secrets to the benefit of someone other than the owner of the information; and,

    d. The defendant intended or knew that her actions would injure the owner of the information.

Finally, to constitute a violation of Economic Espionage under 18 U.S.C. § 1831(a), the government must meet all the elements of § 1832(a), and then prove beyond a reasonable doubt that

6

the defendant intended or knew that the offense would benefit a foreign government, instrumentality, or agent.

The parties have entered a joint factual stipulation describing the material alleged by the government to be trade secrets. Docket 292-1, ¶ 8 (Avago); ¶ 10 (Skyworks). The parties agree that this material was the property of Avago and Skyworks, respectively, and that each company "derived a competitive advantage in the marketplace by keeping this information confidential." *Id.* The stipulation describes the steps taken by each company to keep the alleged trade secrets confidential, and the parties agree that these steps were "consistent with industry standards." *Id.* at ¶ 9 (Avago); ¶ 11 (Skyworks). The stipulation further describes emails containing this material that were sent or received by Dr. Zhang during the relevant time period – i.e., when he, Mr. Pang, and others were developing the concepts and plans for the MEMS research laboratory at TJU. *Id.* at ¶ 15. The stipulation does not address whether the material was "actually secret" or whether the measures taken to protect the material were "reasonable" under 18 U.S.C. § 1839(3), and thus does not answer the question of whether the material was in fact trade secret. Further, the stipulation does not address whether Dr. Zhang knew the information was trade secret, whether he had the intent to convert trade secrets to the benefit of someone other than their owner, or whether he knew or intended that his actions would harm the owners of the trade secret, all required elements under 18 U.S.C. § 1832(a).

With respect to the allegation that Dr. Zhang committed economic espionage, the stipulation does not address whether any entity at issue in this case was a "foreign government, foreign instrumentality, or foreign agent" under 18 U.S.C. § 1831(a) as those terms are defined in 18 U.S.C. §§ 11 and 1839(1), (2). The stipulation also does not address whether Dr. Zhang knew or intended that his conduct would benefit any such government, instrumentality, or agent, as required by 18 U.S.C. § 1831(a).

Dated: September 3, 2019

SWANSON & MCNAMARA LLP

_____/S/_____
Edward Swanson
Attorney for Defendant Hao Zhang

Dated: September 3, 2019

NOLAN BARTON & OLMOS LLP

_____/S/_____
Daniel Olmos
Attorney for Defendant Hao Zhang