UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

    Plaintiff(s)

    v.

HAO ZHANG

    Defendant

Case No. CR 15-106 EJD

SUPPLEMENTAL VERDICT

On June 26, 2020, the court rendered the verdict in this case in open court. Michelle Kane and Susan Knight appeared on behalf of the government. Ed Swanson, August Gugelman and Daniel Olmos appeared on behalf of Defendant, who was present and assisted by a Mandarin language interpreter. The court issues this order of findings as supplemental to the findings made on the record at the hearing.

## I.  The Superseding Indictment

On April 1, 2015, the grand jury returned the Superseding Indictment alleging 32 counts against the six defendants. Defendant Hao Zhang is the only party before the court. Count One alleges a conspiracy between all six defendants to commit economic espionage, in violation of 18 U.S.C. § 1831(a)(5). Superseding Indictment ("S.I.") ¶¶ 22-30. The Superseding Indictment lists 79 overt acts committed in furtherance of the conspiracy. S.I. ¶ 30. Count Two alleges a conspiracy between all six defendants to commit theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(5). S.I. ¶¶ 31-34. It alleges the same 79 overt acts. S.I. ¶ 34. Counts Three through Seventeen allege economic espionage, in violation of 18 U.S.C. §§ 1831(a)(1), (2), (3), and 2. S.I. ¶¶ 35-36. Counts Eighteen through Thirty-Two allege theft of trade secrets, in violation of 18 U.S.C. §§ 1832(a)(1), (2), (3), and 2. S.I. ¶¶ 37-38. The economic espionage and theft of trade secrets counts charge the same offense conduct. Defendant Zhang is not charged in Counts 17 and

32.

## II. Trial Procedure

The parties litigated various motions before the court and the court issued rulings. *See* Dkts. 127, 151, 199. On June 19, 2019, Defendant Zhang waived his right to a jury trial and entered an agreement to conduct a non-jury court trial. *See* Dkts. 291, 293. The parties began the trial that day, admitting an Evidentiary Stipulation of Facts for Trial ("E.S.") as Exhibit One and excerpts of WeChat communications as Exhibit Two. *See* Dkts. 292-1 and 292-2. The court received Trial Briefs from the parties, Dkts. 298, 299, Joint Memorandum of Legal Standards, Dkt. 304, as well as Exhibit and Witness Lists, Dkts. 307, 308, 309, 314, 317, 318. On October 2, 2019 the court heard testimony from government witnesses Letitia Wu and James Mulvenon. On October 25, 2019 the Government filed a dismissal of counts six, sixteen, twenty-one and thirty-one as to Defendant Zhang. Dkt. 319. The court received closing argument briefs from the parties and reply brief from the government. Dkts. 320, 322 and 323. The court heard closing arguments from the parties on December 16, 2019.

## III. Factual Findings

The court has considered all the testimony the exhibits and stipulations of the parties as well as the briefing and arguments of counsel. Considering all the above and the statements made at the hearing on June 26, the court finds as follows.

The evidence shows that Defendant Hao Zhang and co-Defendant Wei Pang both attended and received Ph.D. degrees from the University of Southern California. Both Defendants are electrical engineers and have expertise in the area of Micro-Electro-Mechanical Systems (MEMS). The technology at issue in this case are filters used in wireless devices called Surface Acoustic Wave (SAW) and Bulk Acoustic Wave (BAW) filters, Film Bulk Acoustic Resonators (FBAR) are one type of BAW filter. These filters are commonly used as radio frequency (RF) filters for mobile phones and other devices for consumer and military applications. This technology has assisted the development of smaller, more efficient devices.

Avago Technologies ("Avago") was a designer, developer, and global supplier of a broad range of analog, digital, mixed signal and optoelectronics components and subsystems with a

1  focus in semiconductor design and processing.  Avago was headquartered in San Jose, California,
2  and Singapore, and had facilities around the United States and the world. The facilities operated
3  by Avago included fabrication plants, one of which was in Fort Collins, Colorado.  Skyworks
4  Solutions, Inc. ("Skyworks") was an innovator of high-performance analog semiconductors.
5  Skyworks was headquartered in Woburn, Massachusetts, and had facilities around the United
6  States and the world. The facilities operated by Skyworks included fabrication plants, one of
7  which was in Woburn.  Dkt. 292-1.  Defendant Zhang began working for Skyworks in 2006.  His
8  co-defendant Wei Pang was working for Avago in 2006.

9       Defendant Zhang has stipulated that beginning in 2006 and ending no later than February
10 18, 2015, he, along with Wei Pang, Huisui Zhang, Jinping Chen, Zhao Gang, and Chong Zhou
11 began a project to start a new company that would manufacture FBARs in China.  E.S. ¶ 12.
12 Defendant Zhang, Pang, and Huisui Zhang had a plan to "move Avago to China" by October 29,
13 2006.  Huisui Zhang emailed Pang and Defendant notes summarizing a meeting they had that day.
14 E.S. ¶ 15(a). The meeting notes detailed the cost savings in engineers, operators, and fabrication
15 that the three expected to realize in their new endeavor.  For a "cost per wafer" estimate, they used
16 what they represented as the "Avago BAW process" cost.  Exh. 22-02.  The discussion amongst
17 the parties continued, including a discussion in May of 2007 to use the name "clifbaw" for the
18 new company name which co-defendant Pang explained meant "China lift BAW technology."
19 E.S. ¶ 15(i).  The parties continued discussions via emails regarding meeting with potential
20 investors for the new company, concerns about intellectual property and conflicts that might exist
21 with members continued employment or connection with BAW companies.  E.S. ¶ 15(j).  In
22 August and September of 2008, Defendant Zhang and Pang met with TJU officials in San Jose to
23 discuss the plan to create a company that would be supported by TJU.  E.S. ¶ 15 (r)-(t), Exh. 3A:1-
24 4.

25      Sometime in mid-2009, both Defendant Zhang and Pang left their U.S. employers and
26 relocated to China.  E.S. ¶ 14 (mm)-(nn).  Defendant Zhang and Pang planned to form an entity
27 called Novana in the Cayman Islands in September 2009.  The plan was to form a joint venture
28 with MNMT in Tianjin per the directions of TJU officials.  E.S. ¶¶ 13, 15(jj), (pp).

The evidence shows that in 2008 and 2009 the co-defendants were sending each other Avago and other trade secret information including unpublished Avago draft patent applications and other documents that were labeled "confidential." At Wei Pang's request, Defendant Zhang sent Pang copies of trade secrets that Pang had previously stolen from Avago and shared with Defendant Zhang. E.S. ¶ 15(kk). Defendant Zhang also sent Pang Skyworks trade secrets. E.S. ¶¶ 15(x), (hh). Defendant Zhang also applied for U.S. patents using stolen Avago technology, understanding that Pang's name was being left off so as not to attract attention. E.S. ¶¶ 15(ww)-(zz). On October 12, 2009, Defendant Zhang alone filed a U.S. patent that included stolen Avago "Air Bridge" technology. E.S. ¶ 15(aa). In or about August or September of 2010, Defendant Zhang and Pang together applied for a Chinese patent that also included stolen Avago "Air Bridge" technology. E.S. ¶ 15(fff). The fact that he applied for the same patents in China with Wei Pang supports finding he knew that he was using stolen trade secrets.

The evidence shows that in August of 2011, codefendant Gang Zhao cautioned defendants to exercise greater caution when they sent material to companies in China as a previous email clearly showed the name "Avago" on the material. E.S. ¶ (ooo).

The evidence shows that Defendant Zhang was actively involved with the co-defendants toward the goal of creating the new Chinese venture. The evidence shows the defendants knowingly acquired and used toward that end and without consent or permission, information they knew to be proprietary and, at a minimum, highly likely to be trade secrets of their former employers. The evidence is clear that Defendant Zhang did not have permission from the owners to use the proprietary information. Nor were the defendants mistaken about their use or possession of the confidential material. The evidence shows that Defendant Zhang knew the material was protected as he was aware of non-disclosure agreements with his former employer that served as notice of the intent of the employer to protect its proprietary property.

Defendant Zhang argues that because Skyworks ended its FBAR program he did not intend or know that his use or misappropriation of Skyworks trade secrets would harm the company. The evidence shows that Skyworks left the FBAR market in 2009, well after the start of the plan to start the new venture in China with the employer material. Skyworks kept its trade secrets when it

4

left the market. The fact that Skyworks kept its IP instead of selling it or otherwise publicizing it at the time suggests circumstantially that at a minimum, the trade secrets retained value and thus Skyworks would be harmed by unauthorized third-party use or publication. Defendant Zhang admitted that he did not have authorization to send Skyworks material outside the company in November 2008 and that Skyworks did not want him to send the information he sent. *See* Exh. 3A.

The conduct of Defendant Zhang, particularly the overall secrecy of the planning and scheme, suggests scienter of the unauthorized use by Defendant Zhang. At the time Defendant Zhang was exchanging the Skyworks IP, he was also exchanging the Avago trade secrets. E.S. ¶¶ 15(aaa), (bbb), (ddd). The evidence shows that during their planning, defendants expressed concern for the secrecy of their conduct while exchanging emails and their efforts to conceal the origin of the stolen material and information. The evidence shows that TJU provided guidance to the defendants in planning the structure of the new venture, including their positions and titles in the new company. In September of 2009, Defendant Zhang and Pang incorporated Novana in the Cayman Islands with the plan that it would serve as the conduit for a joint venture in Tianjin with MNMT as directed by TJU officials. E.S. ¶¶13, 15(jj)(pp).

The evidence shows that Defendant Zhang and his co-defendants performed at least one overt act in furtherance of the conspiracy within the period indicated in the Superseding Indictment. The evidence shows that Defendant Zhang knew that TJU, MNMT and TEDA were instrumentalities of the Chinese government. The evidence also shows that defendants were aware that ROFS, the business entity created with the guidance, assistance and sponsorship of TJU, would manufacture FBAR material that would compete in the marketplace with their former employers. The evidence shows that Defendant Zhang was aware that TJU did not have a MEMS lab and that he and his codefendant would increase and thus benefit the reputation of TJU by creating the lab, teaching this technology and furthering research to students at TJU. The evidence shows that Defendant Zhang would benefit personally from the teaching position in reputation. The evidence also shows that Defendant Zhang and TJU would benefit as financial stakeholders in ROFS as they would earn significant profits from sales in a market they had not previously

entered.

### 1. Theft of Trade Secrets

The court finds that the totality of the circumstances and evidence support finding that Defendant Zhang is guilty of Theft of Trade Secrets as alleged in the Superseding Indictment.

### 2. Economic Espionage

The government has shown that the defendants stole trade secrets from their previous employers and that they intended to start a new business in China using the stolen information. They ultimately connected with TJU, a Chinese governmental instrumentality, and they obtained professorships at the university based on their academic and professional experience and their commitment to start a MEMS lab at the university. TJU was aware of the trade secrets the defendants brought. With guidance from TJU, the defendants filed Chinese patent requests and created a shell company in the Cayman Islands they called Novara. ROFS was created to manufacture product realized from use of the trade secrets. ROFS was funded in part by MNMT, the financial investment arm of TJU. TJU took a 6% interest in ROFS.

Defendant Zhang argued that MNMT/TJU's 6% investment was not enough to be a benefit to a foreign instrumentality, and that the foreign instrumentality, here MNMT/TJU was attenuated from ROFS such that there is no connection and the first element of 18 U.S.C. §1831 cannot be met. However, as the court noted, a reasonable jury could find that inherent in any venture capital relationship is a benefit to the investor and the recipient of the investment. Venture capital means money invested in the ownership element of a new enterprise. This financial relationship would support finding that TJU, an instrumentality of the Chinese government, had an investment in ROFS, the private company created by defendants, with knowledge of TJU. As a joint investor, TJU would derive a financial benefit from the investment, however small it might be. The evidence also supports a reasonable jury finding that the structure of ROFS could make it an instrumentality as well by virtue of the control and sponsorship TJU exercised in the creation of ROFS, as evidenced by the close relationship all the parties shared throughout the transaction separate from their financial investment.

The government argued that the 2011 funding application for the venture that defendants

submitted to TEDA mentions the close and collaborative relationship between ROFS, the MEMS LAB and TJU and is additional evidence that suggests a stronger relationship amongst the defendants and TJU, a foreign instrumentality. The evidence shows it is reasonable that TJU was aware of the stolen trade secrets the defendants brought with them. A reasonable jury could find that TJU knew of the stolen character of the trade secrets and wanted to initially distance themselves from them for liability concerns.  Therefore, TJU directed the defendants to file patent applications first such that when the joint venture ROFS was created, it would manufacture product based on the stolen trade secrets that the defendants had filtered through the Chinese patent process.

## IV. Order

Considering the above and for the reasons stated at the hearing on June 26, 2020, the court finds that Defendant Zhang is guilty beyond a reasonable doubt of:

-Counts 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29 and 30, Theft of Trade Secrets in violation of 18 U.S.C. §§ 1832(a)(1)(2)(3) and §(2);

-Count 2, Conspiracy to Commit Theft of Trade Secrets in violation of 18 U.S.C. § 1832(a)(5);

-Counts 3, 4, 5, 7, 8, 9, 10, 11, 12, 13 14, 15, Economic Espionage in violation of 18 U.S.C. §§ 1831 (a)(1)(2)(3) and § 2; and

-Count 1, Conspiracy to Commit Economic Espionage in violation of 18 U.S.C. § 1831(a)(5).

**IT IS SO ORDERED**.

Dated: July _1_, 2020

EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE