DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
SUSAN KNIGHT (CABN 209013)
Assistant United States Attorneys

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   FAX: (510) 637-3724
   michelle.kane3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CASE NO. CR 15-00106 EJD** |
| Plaintiff, | ) |
| | ) **UNITED STATES' SENTENCING** |
| v. | ) **MEMORANDUM** |
| | ) |
| HAO ZHANG, | ) Date: August 31, 2020 |
| | ) Time: 1:30 p.m. |
| Defendant. | ) |
| | ) |

## INTRODUCTION

Defendant Hao Zhang will face sentencing by this Court following his conviction after trial on charges of Conspiracy, Economic Espionage, and Theft of Trade Secrets. Pursuant to Criminal Local Rule 32-5(b), the United States respectfully submits this memorandum to discuss the applicable Sentencing Guidelines ("Guidelines") calculations and to advise the Court of its sentencing recommendation, taking into account the sentencing factors in 18 U.S.C. § 3553(a).

The parties disagree on the application of the Guidelines in this case. Specifically, there is a dispute over whether the defendant has accepted responsibility for his criminal conduct and whether his situation merits a downward variance. The defendant's statement to the Court in the final PSR shows no

regard for the seriousness of his actions and the harm he has caused. The United States recommends and respectfully requests that, consistent with the parties' pretrial Agreement, the Court decline to reduce defendant's applicable Guideline offense level for acceptance of responsibility and that the Court sentence defendant to a term of imprisonment at the low end of the resulting range without any variance. The appropriate sentence in this case is 41 months of imprisonment, a three year term of supervised release, restitution, forfeiture, and a $2,600 special assessment.

## BACKGROUND

### A. Offense Conduct

The Court is familiar with defendant's actions, the full record of which is described in the Court's Supplemental Verdict, the parties' Evidentiary Stipulation, and the evidence introduced at trial. In summary, defendant and his co-conspirator Wei Pang kicked off their plan to "move Avago to China" by October 2006, shortly after they started working at Skyworks and Avago, respectively. At that time, defendant had recently graduated from the University of Southern California, where he met Pang, with a Ph.D. in electrical engineering. During their employment, Pang and defendant stole trade secrets involving FBAR/BAW technology from their employers and shared them with each other, all while further developing their plan to start a Chinese company to compete with the U.S. companies.

After initially seeking venture capital funds, the co-conspirators decided to pursue an arrangement to establish their company with Tianjin University ("TJU") in China. Both Pang and defendant earned themselves professorships at TJU using stolen trade secrets to enhance their academic reputations. In particular, defendant applied for and obtained patents in his own name using stolen Avago technology.

In 2009, defendant and Pang left the United States and relocated to China. They also incorporated a company, Novana, in the Cayman Islands. At the direction of TJU officials, Novana formed a joint venture with Micro Nano Manufacturing Tech ("MNMT"), which was wholly-owned by TJU. The joint venture, ROFS Microsystems, would manufacture RF filters under the auspices of TJU to compete with Avago and others. Defendant and his co-conspirators, who included TJU and ROFS personnel, continued to share and use stolen trade secrets as they developed their Chinese business. The stolen technology would enable the new Chinese business to compete in the global FBAR/BAW market,

something China had not been able to do at the time. A 2011 funding application that defendant and his co-conspirators submitted to the Tianjin Economic Development Area ("TEDA") described the goals of the business and the close and collaborative relationship between ROFS, TJU, and the new MEMS lab that defendant helped develop. Defendant knew that TJU, MNMT, ROFS, and TEDA were instrumentalities of the Chinese government and used the trade secrets stolen from Avago and Skyworks to benefit those entities.

It is important to recognize that, throughout the scheme, defendant understood that the Skyworks and Avago technology was stolen. Evidence of his knowledge included "confidential" markings on documents he shared with Pang, Skyworks' use of nondisclosure agreements, conversations in which he and his co-conspirators discussed keeping their conduct secret, and efforts to conceal the origin of stolen information. Defendant was part of the plan from the beginning and was an active participant, not a minor player.

### B. Procedural Background

This case has been litigated since defendant's initial appearance in May 2015. Defendant filed a motion for a bill of particulars, which the Court denied. ECF No. 127. Defendant filed a motion to dismiss the charges in the superseding indictment against him related to Avago based on a delay in resolving a discovery dispute that did not involve the government. That motion was also denied by U.S. Magistrate Judge Nathanael Cousins, who noted that there was no evidence, and no assertion, that the prosecution had delayed either its own disclosures or the production of documents by Avago. ECF No. 174. Defendant also filed a motion to suppress statements he made during a voluntary interview, which the Court denied. ECF No. 199. In the motion, defendant accused the agents of violating his constitutional rights. The Court's findings included a determination that, despite defendant's argument to the contrary, he understood and spoke English at the interview. The order denying the motion to suppress was entered in February of 2018. The rest of 2018 was taken up with a dispute over defendant's representation. Finally, in May of 2019, the parties negotiated an agreement for a bench trial, which began on June 19, 2019. ECF No. 291. The parties stipulated to many of the facts alleged in the Superseding Indictment. ECF No. 292-1. Defendant did not, however, stipulate to all facts relevant to prove certain elements of the offenses, including that he knew the Avago materials that Wei Pang

stole were valuable trade secrets, that he intended to misappropriate Skyworks material, or that he intended or knew that the offense would benefit a foreign entity or instrumentality. The government proved these facts at trial. ECF No. 341 at 4:16-5:16; 5:19-6:1. Defendant cross-examined the government's witnesses at trial and argued forcefully against such findings at closing arguments and in closing briefs. ECF No. 322.

### C. Sentencing Guidelines Calculation

The parties' Agreement resolves some issues regarding the application of the Sentencing Guidelines. In particular, the parties agreed on a range for the loss amount of $250,000 to $500,000. The Agreement allowed argument over which subpart of U.S.S.G. § 2B1.1(b)(14) would apply, however, after the Court's verdict, there should be no dispute that "the offense would benefit a foreign government, foreign instrumentality, or foreign agent" and that the four-level increase of section 2B1.1(b)(14)(B) applies.

The PSR finds that defendant qualifies for a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The parties' Agreement allows such an argument by defendant. The facts of the case, including the pre-trial statements and conduct that should be the primary factor in the Court's determination, do not support that finding.

Application Note 1 to section 3E1.1 lays out eight factors that the Court should consider in evaluating defendant's acceptance of responsibility. None of these factors weighs in defendant's favor here. He did not, for example, voluntarily terminate his membership in the conspiracy, nor did he manifest any acceptance of responsibility prior to his conviction. U.S.S.G. § 3E1.1, note 1(B), (H). He stipulated to some facts, but exercised his right to contest others at trial. U.S.S.G. § 3E1.1, note 1(A).

Application Note 2 recognizes that, in limited circumstances a defendant may proceed to trial but also clearly demonstrate acceptance of responsibility. The examples given include challenges to the constitutionality of a statute or the applicability of a statute to defendant's conduct. The PSR is incorrect in finding that defendant did not contest the conduct alleged by the government. PSR ¶ 37. Defendant argued at trial that he did not have the requisite intent or knowledge to commit the charged offenses. Those mental states are key elements of the offenses of economic espionage and theft of trade secrets. He also argued that the Chinese entities that benefited from his conduct were not government

instrumentalities. Proving benefit to a Chinese government instrumentality was a crucial part of the government's case. As was his right, defendant put the government to its burden of proof at trial. The United States met that burden and defendant must now face the consequences.

Defendant's statement also manifests his failure to take responsibility for his actions. Other than one sentence in which he states that he "made mistakes" and "deeply regret[s] what [he] did," the entire statement is about the negative consequences of the prosecution on defendant and his family. He says nothing to indicate that he recognizes the harm he has caused to Avago and Skyworks, and to the hardworking employees of the companies who developed the technology that defendant his co-conspirators stole. Defendant omits any acknowledgment of how he betrayed the trust placed in him and helped Pang to betray Avago, all the while secretly working for Chinese government instrumentalities.

Moreover, his statement falsely suggests that he took the job at TJU only because he was laid off from Skyworks and TJU "invited" him back to China.[1] The evidence is clear that defendant and Pang hatched their plan to "move Avago to China" in 2006, shortly after he began working there and several years before Skyworks exited the FBAR/BAW business in 2009. In November 2006, while Skyworks was still in the business, defendant, Pang, and another co-conspirator discussed the difficulties with intellectual property while at their current companies, and the problem of building an FBAR "outside of Skyworks and Avago." ECF No. 292-1 ¶ 15(d). In January 2007, the same three discussed how they would be able to compete in China with the labor costs of "any typical western company," noting, "no filter (FBAR or SAW) company can compete with us. ECF No. 292-1 ¶ 15(h). These statements show that the defendant's intent from the beginning of his employment at Skyworks was to build a company on stolen intellectual property that would take market share from the victims of those thefts. Furthermore, in August and September 2008, again while he was still working at Skyworks, defendant and Pang met with TJU officials in San Jose to discuss the plan to develop a company that would be supported by TJU. ECF No. 292-1 ¶ 15(r)-(t); Gov't Exh. 3A:1-4. TJU did not simply "invite" defendant back to China on its own – defendant was an active participant. By submitting a self-serving statement to the Court that contradicts the evidence to which he previously agreed, defendant has shown that he

---

[1] Defendant was also not "laid off" from Skyworks – he was given a job in a new component.

does not accept responsibility for his wrongdoing.

Thus, the Guidelines calculation should be as follows:

a. Base Offense Level (U.S.S.G. § 2B1.1(a)(2))   6
b. Infringement amount between $250,000 and $550,000 (U.S.S.G. §2B1.1(b)(1)(G))   +12
c. Offense would benefit a foreign government, foreign instrumentality, or foreign agent (U.S.S.G. § 2B1.1(b)(14)(B))   +4
d. Total Offense Level   22

Defendant has no known criminal history, therefore, with an offense level of 22, the Guidelines range is 41 to 51 months of imprisonment.

### D. Restitution and Forfeiture

The PSR recommends that the Court impose a restitution award of $416,674.35 to Avago, based on Avago's expenses in assisting the government in the investigation and prosecution of the offenses. 18 U.S.C. § 3663(b)(4). After the final PSR was released, Skyworks submitted a victim impact statement, describing similar expenses of $60,160.46. The Court should impose the additional restitution amount to Skyworks pursuant to 18 U.S.C. § 3663(a)(4).

The Court found that "[d]efendant Zhang also applied for U.S. patents using stolen Avago technology" and specifically that "[o]n October 12, 2009, Defendant Zhang alone filed a U.S. patent that included stolen Avago 'Air Bridge' technology." ECF No. 341 at 4:6-9. The Victim Impact Statement submitted by Avago (and its corporate successor, Broadcom) contains further details regarding the patents that contained stolen Avago technology. The U.S. patents at issue are the following:

| Patent No. / Appl. No. | Title | Filing Date | Named Inventor(s) |
|---|---|---|---|
| 8,692,631 | Bulk Acoustic Wave Resonator and Method of Fabricating Same | 10-12-2009 | Hao Zhang |
| 8,384,497 | Piezoelectric Resonator Structure Having an Interference Structure | 12-18-2009 | Hao Zhang |
| 8,253,513 | Temperature Compensated Thin Film Acoustic Wave Resonator | 3-16-2010 | Hao Zhang |
| 12/813,147 | Acoustic Wave Resonators and Methods of Manufacturing Same | 6-10-2010 | Hao Zhang |
| 8,830,012 | Composite Bulk Acoustic Wave Resonator | 9-7-2010 | Wei Pang, Hao Zhang |

The patents are proceeds of the offenses and therefore subject to forfeiture pursuant to 18 U.S.C. §§ 1834 and 2323. Based on conversations between counsel, the United States understand that defendant will not dispute the forfeiture of the U.S. patents that incorporated stolen Avago technology. The United States intends to submit a preliminary Order of Forfeiture prior to the sentencing hearing.

## UNITED STATES SENTENCING RECOMMENDATION

The nature and circumstances of the offense, the seriousness of the offense, the need to afford adequate deterrence, and the need to avoid unwarranted sentence disparities all weigh in favor of a low-end Guidelines sentence of 41 months in this case. The record establishes that defendant worked to undermine his employer and Avago while secretly conspiring with Chinese officials to steal U.S. technology. The conspiracy succeeded – defendant and Wei Pang obtained professorships at TJU, founded the MEMS lab, and launched ROFS to compete with the companies that had legitimately developed the technology they stole. This extraordinary act of betrayal merits significant punishment, including a substantial custodial sentence.

Defendant worked to benefit Chinese government instrumentalities, but he also worked to benefit himself. He and his co-conspirators initiated and developed their plan with the goal of making money. For example, in January 2007, defendant, Pang, and another co-conspirator discussed how they would be able to compete in China with the labor costs of "any typical western company," noting, "no filter (FBAR or SAW) company can compete with us. ECF No. 292-1 ¶ 15(h).

When American venture capital shied away from investing in stolen technology, defendant and his co-conspirators pivoted to the Chinese government instead. In addition to obtaining U.S. and Chinese patents in his own name using stolen technology, defendant obtained a lucrative appointment at TJU with those patents in his portfolio. Defendant and Pang set up their shell company, Novana, in the Cayman Islands in 2009 at the direction of TJU. Also at the direction of TJU, Novana and TJU's subsidiary MNMT formed the ROFS joint venture. Defendant and other co-conspirators were also direct shareholders in ROFS. Defendant was therefore deeply invested in the business built on stolen technology. Thus, in addition to the reputational value of the professorship and the patents, defendant stood to benefit financially from the success of ROFS.

The advantage that the stolen trade secrets would provide in the commercialization is plain. It

took Avago over twenty years of research and development to arrive at the point its FBAR processes had reached when defendant and Pang decided to steal them. The defendant and his co-conspirators recognized in their 2011 funding application that "[t]he FBAR technology from [Avago] in the U.S. is five years ahead of the rest of the world and it is a total blank for China in this area. Generally speaking, our country is 10 to 15 years behind the developed countries in the RF filters and resonators area." By using the stolen technology, defendant's company could finally enter the market and compete, albeit unfairly. Defendant intended his actions to help MNMT and ROFS seize a piece of the multi-billion dollar global market for cell phone RF filters. The Chinese instrumentalities, and defendant himself, had the prospect of millions, if not billions, of dollars in profit if they succeeded.

The PSR finds that a downward variance is appropriate given defendant's performance on pretrial release and his tremendous family and community support. The five years of extended pretrial release are, however, largely a product of defendant's own litigation strategy. Moreover, he has maintained his professorship at TJU throughout this time and plans to return to that job when he is permitted to go back to China. The fact that defendant has done the bare minimum by complying with the terms of his release should not warrant a lesser sentence. His family and community support are not new -- both should have concerned him as he engaged in his course of criminality. He should not be rewarded now for having a supportive family that has stood by him when he showed a lack of concern for them while committing his crimes.

In considering the potential for a variance, the Court should balance the factors cited in the PSR with the undeniable seriousness of the offenses. While the agreed-upon loss amount reflects the difficulty of accurately assessing such valuable trade secrets in the sentencing context, there is no doubt that the theft represented a much higher potential loss to Avago and Skyworks and a much higher potential gain for defendant and his co-conspirators. As Wei Pang wrote, "[t]he filter market for cell-phone alone is estimated to be more than $1 Billion in 2006." ECF No. 292-1 at ¶ 15(e). The Guidelines loss amount here should not be taken as any indication that this was an insignificant crime. Moreover, Congress, in enacting a fifteen year maximum sentence for economic espionage while setting a ten year maximum for theft of trade secrets, recognized that acting to benefit a foreign power represents a significant ratcheting up of the threat to the U.S. industry.

The sentence imposed should not only deter this defendant from future crime, but also deter others who might attempt similar offenses. The evidence at trial established that both Avago and Skyworks took reasonable measures to protect their intellectual property. Nevertheless, defendant and Pang were able to steal crucial trade secrets and transfer them to China. Crimes like this carry a tremendous financial upside, as defendant and his co-conspirator realized. If others do not see that stealing trade secrets and committing economic espionage also carry the potential for serious criminal penalties, including imprisonment, that financial incentive will prevail. As Skyworks' Victim Impact Statement notes:

> The United States and its citizens benefit when intellectual property is protected. Such protections stimulate innovation that improves our lives and economy. Skyworks' business—and the thousands of jobs it creates—are built on innovation and the protections afforded to the Company's intellectual property, including the trade secrets at issue here. Any unpunished theft of Skyworks' trade secrets has the potential to cause economic harm to the Company and the U.S. economy, job losses, and disincentives for future innovation. Skyworks thus urges the Court to impose a sentence on Defendant Zhang that will deter future intellectual property theft by the defendant and others.

The Court should also consider the sentences for similar defendants in this District. Earlier this month, Anthony Levandowski, who was convicted of stealing self-driving car technology from Google, received a sentence of eighteen months of imprisonment. CR 19-00922 WHA. Defendant Levandowski pleaded guilty before trial, less than a year after he was indicted, and was not accused of acting to benefit a foreign entity or instrumentality. In 2014, Walter Liew, who was convicted after a jury trial of economic espionage, theft of trade secrets, conspiracy, tampering with evidence, false statements, and other offenses, was sentenced to a total term of 180 months of imprisonment. CR 11-00573 JSW. Liew, like defendant Zhang, stole U.S. technology to benefit Chinese entities, instrumentalities, or agents. He also engaged in additional obstructive behavior and was convicted after a multi-week trial. Given these two poles, the government's recommended sentence of 41 months appropriately situates defendant Zhang along the spectrum of similar conduct.

//

# CONCLUSION

For the reasons set forth above, the government respectfully requests that this Court sentence defendant to 41 months of imprisonment, three years of supervised release, restitution to Broadcom/Avago and Skyworks, forfeiture of the U.S. patents obtained with stolen technology, and a $2,600 special assessment.

DATED: August 24, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

         /s/
MICHELLE J. KANE
SUSAN KNIGHT
Assistant United States Attorneys